Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000826
20-MAR-2020
07:51 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

THE ESTATE OF JOANNA LAU SULLIVAN,
AKA JOANNA NGIT CHO LAU SULLIVAN, Deceased

NO. CAAP-17-0000826

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(LP NO. 15-1-0698)

MARCH 20, 2020

FUJISE, PRESIDING JUDGE, LEONARD, J.; AND
CIRCUIT JUDGE SOUZA, IN PLACE OF GINOZA, C.J.,
AND CHAN, HIRAOKA AND WADSWORTH, JJ., ALL RECUSED

OPINION OF THE COURT BY LEONARD, J.

This case arises out of a petition for the probate of a will and the appointment of a personal representative to administer the decedent's estate. One of the decedent's children petitioned for the appointment of a special administrator to properly administer a potential claim against the decedent's estate planning attorney, who is now the personal representative of the decedent's estate. The potential claim is that the

attorney may have negligently advised the decedent and/or provided her with materially inaccurate information, which she allegedly relied on to the detriment of her estate or certain beneficiaries of her estate.

As explained below, we hold, *inter alia*, that under Hawai'i law: (1) a special administrator is appointed when a personal representative cannot or should not act temporarily, such as when a conflict of interest exists; (2) a fundamental duty of a personal representative is to act as a fiduciary, consistent with the best interests of the estate and successors to the estate; (3) a personal representative cannot properly administer an estate with respect to evaluating issues related to a legally-cognizable claim against the personal representative himself because his self-interest creates a conflict with his fiduciary duties to the estate; (4) based on the potential claims identified by the petitioner here, we cannot conclude that there is no justiciable claim subject to the administration of the estate; and (5) therefore, the appointment of a special administrator is necessary under the circumstances of this case.

Petitioner-Appellant Colleen H.A. Sullivan (**Colleen**) appeals from the Amended Judgment on Order Denying Petition to Appoint a Special Administrator (**Amended Judgment**), entered on November 9, 2017, in the Circuit Court of the First Circuit sitting in probate (**Probate Court**).[1] Colleen also challenges the Probate Court's Order Denying Petition to Appoint a Special

---

[1] The Honorable R. Mark Browning entered the Amended Judgment.

Administrator (**Order Denying Appointment**), entered on February 27, 2017, as well as an earlier judgment, which was entered on February 27, 2017 (**Judgment**).[2]

I.    BACKGROUND

The Decedent, Joanna Ngit Cho Lau Sullivan (**Mrs. Sullivan**), along with her husband, Maurice J. Sullivan (**Mr. Sullivan**), started the Foodland Super Market, Limited (**Foodland**) chain of grocery stores.  Mr. and Mrs. Sullivan had four children:  Respondent-Appellee Maureen Jenai Sullivan Wall (**Jenai**); Respondent-Appellee Kathleen Weng Ai Sullivan Wo (**Kitty**); Patrick Joseph Dick Ming Sullivan (**Patrick**); and, Colleen.  Mr. Sullivan died in 1998.

Foodland stock is not publically traded.  At some time in or prior to 2001, all four children owned shares of Foodland common stock.  In 2001, Patrick and Colleen sold all of their Foodland common shares to Mrs. Sullivan, Jenai, and/or Kitty.  Patrick and Colleen have not been actively involved with the operation of Foodland.

The Joanna Lau Sullivan Family Limited Partnership (**Joanna FLP**) is a limited partnership holding closely held stock of Foodland.  At some time prior to December 28, 2011, Mrs. Sullivan transferred all of her 21.33% interest of common shares in Foodland to the Joanna FLP.

Respondent-Appellee Elliot H. Loden (**Loden**), who is now the personal representative of Mrs. Sullivan's estate (**Estate**),

---

[2]    The Honorable Derrick H.M. Chan initially presided over these proceedings and entered the Order Denying Appointment and the Judgment.

was Mrs. Sullivan's estate planning attorney. It appears that Mrs. Sullivan's estate plan included a will (**Will**) and a trust, entitled the Revocable Trust of Joanna Ngit Cho Lau Sullivan (**Trust**).[3] The Will, which was executed in 2008, and the Trust apparently were both drafted by Loden. The Will named Loden as the Personal Representative. Both the Will and Trust include a "no-contest" provision.

On or about September 28, 2012, Mrs. Sullivan filed a 2011 United States Gift (and Generation-Skipping Transfer) Tax Return (**2011 Return**). The 2011 Return reported certain cash gifts to Mrs. Sullivan's children and grandchildren. The 2011 Return also reported gifts, dated December 28, 2011, transferring general and limited partnership interests in the Joanna FLP to Jenai and Kitty. The 2011 Return included an appraisal of Foodland business interests – performed by Loden, who signed it as Appraiser and Attorney-At-Law – to support the valuation of the Joanna FLP interests gifted by Mrs. Sullivan. Loden's appraisal purportedly employed two different methods of valuing Foodland, ultimately rejecting a method based on capitalization of earnings[4] and instead adopting a method based on book value, which was purportedly derived from a Foodland balance sheet and profit and loss statements. The appraisal also applied a

---

    [3]    It appears that, in her capacity as Grantor and initial Trustee, Mrs. Sullivan executed the Trust on August 5, 1986, and amended it on August 15, 2013. Although an excerpt from the 2013 amended Trust is in the record, neither the 1986 Trust nor a full copy of the 2013 amended Trust appears in the record on appeal. Among other things, the amended Trust names Loden as the successor Trustee.

    [4]    The appraisal stated that Foodland had net operating losses in each of the four prior years.

"reasonable minority interest and lack of marketability" discount of 25% to the derived "final fair market value" to reflect a minority ownership interest in a closely-held business.

On or about May 9, 2013, Mrs. Sullivan filed a 2012 United States Gift (and Generation-Skipping Transfer) Tax Return (**2012 Return**). The 2012 Return reported additional gifts, dated January 3, 2012, transferring additional general and limited partnership interests in the Joanna FLP to Jenai and Kitty. The 2012 Return again included an appraisal of Foodland business interests – signed by Loden as Appraiser and Attorney-At-Law – that was essentially identical to the appraisal supporting the 2011 Return. The Loden appraisals, which were dated July 27, 2012, and April 15, 2013, both valued the "donor's" 21.33% interest in Foodland as of a valuation date of December 2011, at $1,359,787.

Mrs. Sullivan passed away at the age of 94 on September 2, 2015.

On October 22, 2015, Loden filed a Petition for Probate of Will and for Appointment of Personal Representative (**Petition for Probate**). The Petition for Probate requested that the Will be admitted to probate as and for the Last Will and Testament of Mrs. Sullivan and that Loden be named as the Personal Representative. On January 11, 2016, the Probate Court entered an order granting the Petition for Probate and naming Loden as the Personal Representative.

In May of 2016, Colleen's counsel obtained copies of the 2011 and 2012 Returns. Colleen's counsel engaged the

services of Mark Hunsaker, a certified public accountant accredited in business valuation, certified business appraiser, and certified valuation analyst (**Hunsaker**), to review the appraisals submitted with the returns. Hunsaker opined, for various reasons, that Loden's appraisals of Foodland "are not trustworthy valuations."

On September 12, 2016, Colleen's counsel wrote to Loden's counsel regarding "a potentially significant problem with the administration of [Mrs. Sullivan]'s estate and trust." The gravamen of the letter was that, if Loden's appraisals undervalued the Joanna FLP interests gifted to Jenai and Kitty, Mrs. Sullivan would have received and relied upon erroneous information that was material to her estate plan in attempting to equalize gifts among her children. The letter suggested that such an error might be rectified through a "reallocation" of residual assets.[5] The letter went on to provide that it would be in Loden's best interests to get a proper valuation of the Joanna FLP interests prior to any significant distribution of Estate or Trust assets. The letter concluded by pointing out the "complication" that the appraisals in question were prepared by the current Personal Representative, and proposing that Loden either step down as Personal Representative and Trustee, or that a Special Administrator be appointed to secure a new appraisal(s) of the Joanna FLP interests.

---

[5]    It appears that Colleen has since abandoned the reallocation theory, perhaps recognizing the significant potential downside of challenging the distributions set forth in the Will and Trust.

On October 4, 2016, Loden's counsel responded. Counsel noted Loden's professional experience in business valuation and disputed that Mrs. Sullivan intended equal distributions to her children, as opposed to equitable distributions. Loden challenged Hunsaker's conclusions, noting in particular that the sole purpose of Loden's appraisals was for use in the filing of the respective 2011 and 2012 Returns.

On October 13, 2016, Colleen's counsel replied, indicating, *inter alia*, Loden's potential malpractice liability and resulting conflict of interest. Colleen again requested that Loden agree to the appointment of a Special Administrator. On October 24, 2016, through counsel, Loden declined to do so.

On November 3, 2016, Colleen filed a Petition to Appoint a Special Administrator (**Petition to Appoint**), which sought the appointment of a Special Administrator to obtain financial information regarding the valuation of the 2011 and 2012 limited partnership gifts for the purpose of determining the value of the gifts and "the effect of an appropriate valuation on the estate." The Petition to Appoint submits that Mrs. Sullivan's estate plan shows an attempt to treat her four children more or less equally, in particular, that the limited partnership gifts were offset by cash gifts to Colleen and Patrick in the Trust, which was amended in the same time frame as the limited partnership gifts. The Petition to Appoint asserts that, depending on the result of the valuation, either the Estate

or the aggrieved beneficiaries might pursue a claim against Loden.[6]

Loden opposed the Petition to Appoint, noting his professional experience and, *inter alia*, disputing that Mrs. Sullivan intended to treat her children equally. Loden denied that he had any conflict of interest in carrying out any part of the duties as Personal Representative of the Estate. Jenai and Kitty also opposed the Petition to Appoint, disputing the validity of Hunsaker's conclusions and objecting to the cost the Estate would incur if the Petition to Appoint were granted.

In response to the objections, Colleen further noted alleged deficiencies in the Loden appraisals and contended that Mrs. Sullivan would have relied on the valuation of her gifts to Jenai and Kitty in determining the amount of her separate gifts to Colleen and Patrick that were (apparently) provided through the 2013 amendment to the Trust. Colleen further stated that, if Loden's valuations overstated the value of the gifted partnership interests, an overpayment of estate taxes would result, thus harming the Estate.[7] Colleen clarified that she was not contesting any part of Mrs. Sullivan's estate plan; rather, she submitted, there was "strong evidence" that Loden may have negligently advised or provided erroneous information to Mrs.

_____

[6]    The Petition to Appoint is somewhat vague on what, if any, other remedial action might be taken by the Estate if, in fact, a further valuation resulted in a determination that the gifted limited partnership interests were materially undervalued.

[7]    This proposition was supported by a further Hunsaker declaration. An earlier declaration had otherwise addressed Hunsaker's opinions regarding the Loden appraisals.

Sullivan, which Mrs. Sullivan relied on to the detriment of the Estate and/or her beneficiaries.

On January 19, 2017, the Probate Court held a hearing on the Petition to Appoint. No oral testimony was taken. After arguments by counsel, the Probate Court ruled that, "based upon the records and files in this case, including the submissions and arguments by counsel, I'm going to respectfully deny the petition."

The Order Denying Appointment and Judgment were entered on February 27, 2017. After Colleen's initial appeal was dismissed for lack of appellate jurisdiction, the Amended Judgment was entered on November 10, 2017, and Colleen timely filed a notice of appeal from the Amended Judgment.

## II. POINTS OF ERROR

Colleen raises two points of error on appeal, contending that the Probate Court erred in concluding that: (1) the circumstances of the matter do not require the appointment of a special administrator under the applicable statute; and (2) Loden's appraisals were adequate and trustworthy.

## III. APPLICABLE STANDARDS OF REVIEW

Colleen sought the appointment of a special administrator pursuant to Hawaii Revised Statutes (**HRS**) § 560:3-614 (2018), which provides, in relevant part:

> **§ 560:3-614 Special administrator; appointment.** A special administrator may be appointed:
> . . . .
> (2) In a formal proceeding by order of the court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration including its administration in circumstances where a

> general personal representative cannot or should not act. If it appears to the court that an emergency exists, appointment may be ordered without notice.

This statute grants the Probate Court the discretion to appoint a special administrator under the stated circumstances. Accordingly, we review the Probate Court's decision to deny a request for any appointment of a special administrator under the abuse of discretion standard. Cf. In re Estate of Damon, 119 Hawaiʻi 500, 503, 199 P.3d 89, 92 (2008) (interpreting Hawaiʻi Probate Rules (**HPR**) Rule 28(a), which provides that the court may appoint a master, to grant the court with discretion, which is reviewed for an abuse of discretion); In re Puana, CAAP-16-000881, 2018 WL 2928008, *2 (Haw. App. June 12, 2018) (SDO) (reviewing the dismissal of a petition for the appointment of conservator under HRS § 560:5-401, which provides that a conservator may be appointed, for abuse of discretion).

"An abuse of discretion occurs where the probate court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Estate of Damon, 119 Hawaiʻi at 503, 199 P.3d at 92 (quotation marks omitted). "In other words, '[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" In re Trust Agreement Dated June 6, 1974, 145 Hawaiʻi 300, 310, 452 P.3d 297, 307 (2019) (citations omitted).

Colleen contends that the Probate Court erred in determining that Loden's appraisals were adequate and trustworthy.

No express findings of fact concerning the adequacy or trustworthiness of Loden's appraisals were entered by the Probate Court. It thus appears that Colleen submits that the Probate Court must have found, *inter alia*, that the appraisals were adequate and trustworthy in order to deny the appointment of a special administrator. Findings of fact are reviewed under the clearly erroneous standard. See, e.g., <u>Furukawa v. Honolulu Zoological Soc'y</u>, 85 Hawai'i 7, 12, 936 P.2d 643, 648 (1997).

IV. <u>DISCUSSION</u>

    A. <u>Appointment of a Special Administrator</u>

        As set forth above, under HRS § 560:3-614(2), upon a petition from an interested person and after proper notice and a hearing, the Probate Court may appoint a special administrator where such an appointment "is necessary to preserve the estate or to secure its proper administration including its administration in circumstances where a general personal representative cannot or should not act." HPR Rule 56 spells out a number of situations where a special administrator might be appropriate and necessary.[8]

---

[8]     HPR Rule 56 provides:

**Rule 56. WHEN APPROPRIATE.**

    An interested person may seek appointment of a special administrator where necessary to preserve the estate or to secure its proper administration, including but not limited to situations where:

    **(a)** the existence of assets to be probated is uncertain, and an administrator is required to locate or identify assets, including investigating the merits of pursuing a lawsuit or claim for relief; or

    **(b)** no probate assets exist, but an administrator is necessary either to complete an action of the deceased or to act on behalf of the deceased or the deceased's estate (other than receipt of no-fault insurance benefits), including but not limited to releasing legal or equitable

(continued...)

HPR Rule 56(f) specifically contemplates an appointment in a situation such as this one, where "a conflict of interest arises or a situation develops where the personal representative cannot or should not act temporarily, and a special administrator is appointed for the specific purpose of either resolving the conflict issue or temporarily acting until the personal representative can resume full powers."[9]

---

[8](...continued)
interests of the deceased and executing documents in pending or threatened litigation where the deceased is a defendant; or

(c) for some reason, a probate cannot be opened rapidly enough to allow the commencement of a lawsuit before the running of the statute of limitations or the filing of a response or objection in cases where the deceased or the estate is a defendant; provided, however, that the special administrator's authority under this paragraph (c) shall be limited to a period of no longer than six (6) months, and a personal representative must be appointed prior to obtaining court approval of any settlement; or

(d) an emergency or other situation exists such that the estate will be prejudiced unless a special administrator is appointed pending appointment of a personal representative; or

(e) objections have been filed to the probate of a will or to the appointment of a personal representative, and it is advisable to appoint a special administrator to administer the estate with the powers of a personal representative, but not with the power of distribution, pending resolution of the objections; or

(f) a conflict of interest arises or a situation develops where the personal representative cannot or should not act temporarily, and a special administrator is appointed for the specific purpose of either resolving the conflict issue or temporarily acting until the personal representative can resume full powers.

All petitions seeking the appointment of a special administrator shall set forth the grounds for seeking the appointment.

[9] With respect to HPR Rule 56(f), the Commentary to HPR 56 states, in relevant part:

Many practitioners are uncertain of the proper use of a special administration, and some have, once a special administration is established, attempted to run a complete probate without having a personal representative appointed.

(continued...)

Here, it is undisputed that, as a beneficiary of the Trust and a devisee of the Estate, as well as a child of Mrs. Sullivan, Colleen is an interested person. See HRS § 560:1-201 (defining "interested person" to include, inter alia, heirs, devisees, children, and beneficiaries). Colleen has raised a potential claim that either the Estate or she might have against Loden, who is the Personal Representative of the Estate, as well as the Trustee of the Trust, arising out of the legal and/or other professional services that Loden provided to Mrs. Sullivan in conjunction with her estate plan. Simply stated, the potential claim is that Loden may have negligently advised Mrs. Sullivan and/or provided Mrs. Sullivan with materially inaccurate information - i.e., materially inaccurate valuations for the gifted limited partnership interests - which Mrs. Sullivan allegedly relied on in making the Will and/or the Trust, to the

---

[9](...continued)
> This rule provides guidance as to the appropriate situations in which a special administrator should be appointed.
>
> . . . .
>
> Paragraphs (e) and (f) address the need for a special administrator when the regular probate proceeding has been commenced. Under paragraph (e), a special administrator may be appointed where a will contest or objections to the appointment of a specific individual as personal representative have been filed; rather than hold up administration of the estate pending resolution of the contested matter, a special administrator can be appointed with all powers of a personal representative except for the power of distribution.
>
> Paragraph (f) clarifies that a special administrator may be appointed even though a personal representative has been appointed and is acting where, for a limited period or with respect to a specific issue, the personal representative cannot or should not act. For example, if the personal representative has filed a creditor's claim against the estate, a special administrator may be appointed for the sole purpose of evaluating, allowing or disallowing, and defending the claim, while the personal representative can continue to serve on other issues. . . .

detriment of the Estate or certain beneficiaries of the Estate, including Colleen. It is alleged that Mrs. Sullivan relied on the value of the gifts made to two of her children in determining what to leave to her other two children. Thus, improperly low valuations may have led Mrs. Sullivan to bequeath her other children lesser assets or amounts. On the other hand, given the size of the Estate, improperly high valuations might cause the Estate to incur excess estate taxes, as the value of the gifted limited partnership interests would be carried forward to Mrs. Sullivan's estate tax return.

The parties make various arguments concerning the merits of a potential claim or claims against Loden, which arguments are addressed briefly below, but it was and is premature to attempt to evaluate the merits of any such claim(s). The essential issue before the Probate Court was not whether such claim(s) are meritorious, but rather whether Loden, as Personal Representative of the Estate, could properly administer the Estate with respect to evaluating issues related to a potential claim against Loden himself. The answer is clearly no.

The duties and powers of a personal representative are set forth in Part 7 of Hawaii's Uniform Probate Code, which includes:

> § 560:3-703 General duties; relation and liability to persons interested in estate; standing to sue. (a) A personal representative is a fiduciary who shall observe the standards of care applicable to trustees as described by section 560:7-302. A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this chapter, and as expeditiously and efficiently as is consistent with the best interests of the estate. The personal representative shall use the authority conferred upon the personal representative by this chapter, the terms

of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate.

. . . .

(c) Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this State at the decedent's death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as the decedent had immediately prior to death.

Thusly, under Hawai'i law, the most fundamental duty of a personal representative is to act as a fiduciary. A fiduciary is "[s]omeone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure[.]" Black's Law Dictionary 743 (10th ed. 2014). The statute specifically directs that a personal representative must act consistent with the best interest of the estate and for the best interests of successors to the estate.[10] Part (c) of the statute authorizes a personal representative to file suit on behalf of an estate.[11]

Accordingly, a personal representative has a duty to evaluate whether it is in the best interests of the estate and/or persons entitled to receive property of the estate to pursue a claim or file a lawsuit. Here, as the person against whom a potential claim might lie, assuming a legally-cognizable claim might exist, Loden's self-interest was plainly adverse to his

---

[10] "'Estate' includes the property of the decedent, trust, or other person whose affairs are subject to [Hawaii's Uniform Probate Code]." HRS § 560:1-201. "'Successors' means persons, other than creditors, who are entitled to property of a decedent under the decedent's will or [Hawaii's Uniform Probate Code]." Id.

[11] HRS § 560:3-715(22) further provides that a personal representative, acting reasonably for the benefit of interested persons, may prosecute or defend claims for, inter alia, the protection of the estate.

fiduciary duty as Personal Representative of the Estate. See, e.g., Leslie v. Estate of Tavares, 91 Hawai'i 394, 405, 984 P.2d 1220, 1231 (1999) (discussing conflict of interest arising from self-interest that was adverse to fiduciary duty).

In response to the potential claim(s) against him identified by Colleen, Loden first argues that there would be no damages to the Estate because undervaluation would have saved the Estate taxes. Loden also disputes that there is any problem with his valuations, citing his experience and reputation. He argues that in cases of conflicting evidence, credibility determinations should not be disturbed on appeal, and there was substantial evidence to support the trustworthiness of his appraisals. He questions Colleen's motives in raising the issue, noting the "context" of other ongoing disputes between Colleen and her sisters. Finally, he contends that any damages arising out of improper valuations are speculative.

Loden's arguments fail to address his fiduciary duties, his self-interest in avoiding potential claims against him, and his conflict of interest in representing the Estate with respect to these issues.

Jenai and Kitty argue that a special administrator is not necessary because there is no conflict of interest. They submit that the fact that Loden valued the gifted partnership interests that they received is not a basis for appointing a special administrator because any IRS challenge to the valuations in the gift tax returns is now (arguably) time-barred. They do not address Loden's conflict of interest arising out of potential

claims against Loden by the Estate and/or Colleen arising out of undervaluation or overvaluation of the gifted partnership interests.

Jenai and Kitty also argue that the Probate Court did not abuse its discretion in denying the appointment of a special administrator because the Estate would unnecessarily incur fees and expenses for a special administrator and a new appraisal of the gifted partnership interests. We note, however, that Colleen attempted to secure the financial information supporting Loden's valuation, as well as the financial information that Hunsaker opined was necessary to undertake a proper valuation. Her efforts were rebuffed, first by Jenai and Kitty's attorneys, then by Foodland's attorneys, and then by Loden's attorneys. We make no judgment as to whether Jenai, Kitty, and/or Foodland were or were not within their rights to refuse to cooperate with Colleen's out-of-court efforts to evaluate Loden's appraisals. However, under the circumstances of this case, we cannot conclude that the expenses associated with the appointment of a special administrator, without more, constituted sufficient grounds for denying the Petition to Appoint.

As discussed above, the ultimate merit of any potential claim against Loden is not ripe for review. In addition, Loden's self-interest is clearly in conflict with his fiduciary duties as the Personal Representative of the Estate in evaluating and acting on any such claim. Nevertheless, a legally-cognizable claim against Loden must exist in order to warrant the appointment of a special administrator in this case. In other words, if the

17

Petition to Appoint failed to describe a claim against Loden upon which relief could be granted, then the Probate Court would not have abused its discretion in denying the petition, notwithstanding Loden's self-interest in avoiding the defense of a claim against him.

Loden, Jenai, and Kitty argue that there is no claim against Loden because the IRS's statute of limitations applicable to the 2011 and 2012 Returns has run. However, that argument fails to address the gravamen of the potential claim(s) against Loden, as presented to the Probate Court in conjunction with the Petition to Appoint – that is, Loden may have negligently advised Mrs. Sullivan and/or provided Mrs. Sullivan with materially inaccurate information – i.e., materially inaccurate valuations for the gifted limited partnership interests – which Mrs. Sullivan allegedly relied on in making the Will and/or the Trust, to the detriment of the Estate or certain beneficiaries of the Estate, including Colleen. It is alleged that Mrs. Sullivan relied on the value of the gifts made to two of her children in determining what to leave to her other two children. Thus, improperly low valuations may have led Mrs. Sullivan to bequeath her other children lesser assets or amounts. On the other hand, given the size of the Estate, improperly high valuations might cause the Estate to incur excess estate taxes.

This potential claim is, at least primarily, in the nature of legal or other professional malpractice.[12] The issue of

_____

[12] It appears that, notwithstanding somewhat lengthy discussions in the briefs, all of the parties agree that the Probate Court did not rule on
(continued...)

whether a malpractice claim can be brought against a decedent's attorney (or other professional) by a non-client beneficiary was addressed by the Hawai'i Supreme Court in Blair v. Ing, 95 Hawai'i 247, 21 P.3d 452 (2001).[13] In Blair, after an extensive review of case law in other jurisdictions, the supreme court held that "where the relationship between an attorney and a non-client is such that we would recognize a duty of care, the non-client may proceed under either negligence or contract theories of recovery." Id. at 259, 21 P.3d at 464. While the holding in Blair was specific to the facts and circumstances of that case, the supreme court held that the appellants alleged facts that, if proven, would show that the attorney owed them, as beneficiaries of the subject trust, a duty to draft the trust in accordance with the decedents' intent to transfer their assets to the appellants with the minimum tax consequences. Id. at 263, 21 P.3d at 468. The supreme court further held that the appellant had alleged facts in their complaint that, if proven, would show that they were intended third party beneficiaries of the contract between the attorney and the decedent trust settlors, thus entitling them to

---

[12](...continued)
the no-contest provisions in the Will and Trust and, therefore, the interpretation and application of those provisions are not implicated in this appeal. We nevertheless note that, while it does not appear that Colleen's filing of the Petition to Appoint constitutes a contest or attack on the Will or Trust, and seeking relief against Loden would not appear to constitute a claim against any part of the Estate, we express no opinion as to whether Colleen might be, in effect, disinherited if she pursues any sort of claim for redistribution of the Estate.

[13]     As discussed above, HRS § 560:3-703(c) gives a personal representative of an estate the same standing to sue as the decedent had immediately prior to death, unless the particular claim at issue does not survive the death of the decedent.

recover. Id. For those reasons, the supreme court concluded that the trial court had erred in dismissing the appellants' negligence claim and third party beneficiary claim against the attorney. Id.

The case now before us is not even at the pleading stage that was analyzed in Blair. However, as noted above, if the Petition to Appoint had not identified any legally-cognizable claim against Loden, the Probate Court would have been within its discretion to deny the appointment of a special administrator in this case. However, based on the potential claim(s) identified in the Petition to Appoint – that Loden may have negligently advised Mrs. Sullivan and/or provided Mrs. Sullivan with materially inaccurate information, which she allegedly relied on in making the Will and/or the Trust, to the detriment of the Estate or certain beneficiaries of the Estate, including Colleen – we cannot conclude that there was no justiciable claim subject to the administration of the Estate.

As we have previously concluded that Loden's self-interest is clearly in conflict with his fiduciary duties as the Personal Representative of the Estate in evaluating and acting on any claim against Loden himself, we further conclude that the Probate Court abused its discretion in denying, in toto, the Petition to Appoint. That said, we recognize that the relief requested in the Petition to Appoint went beyond a generalized request to appoint a special administrator to act with respect to the matters for which Loden has a conflict of interest. The Petition to Appoint sought, inter alia, the appointment of a particular individual selected by Colleen to undertake particular

tasks identified in the Petition to Appoint. As no argument has been made as to the scope of the duties and powers of a special administrator in this case, we express no opinion on the matter. On remand, the Probate Court may consider anew Colleen's requests for relief as to the scope of the duties and powers of a special administrator, as well as the positions and arguments of other interested persons with respect to the appointment.

B.  The Adequacy and Trustworthiness of Loden's Appraisals

Although identified as a point of error, Colleen does not argue that the Probate Court made a specific determination that Loden's appraisals were adequate and trustworthy. Rather, it appears that Colleen argues that the Probate Court must have concluded that the appraisals were adequate and trustworthy in conjunction with the denial of the Petition to Appoint. Loden argues that this court should not disturb the Probate Court's determination of the credibility of the witnesses and the weight of the evidence. Jenai and Kitty state that they believe Loden's appraisals were properly conducted. However, the Probate Court did not make any factual findings regarding Loden's appraisals, one way or the other. Indeed, there were declarations in support of and challenging the adequacy and trustworthiness of Loden's appraisals.

We conclude that this issue was not ruled on by the Probate Court and appellate review would be premature.

V.  CONCLUSION

For these reasons, the Probate Court's November 9, 2017 Amended Judgment, as well as the February 27, 2017 Order Denying

21

Appointment and Judgment are vacated.  This case is remanded to the Probate Court for further proceedings consistent with this Opinion.

On the briefs:

Paul Alston,
Kristin L. Holland,
(Alston Hunt Floyd & Ing),

    and

Thomas E. Bush,
(Thomas E. Bush Law Office, LLLC),
for Petitioner-Appellant
COLLEEN H.A. SULLIVAN.

Carroll S. Taylor,
(Taylor, Leong & Chee),

    and

Emily Y. Kawashima Waters,
for Respondent-Appellee
ELLIOT H. LODEN, Personal Representative.

Rhonda L. Griswold,
Summer G. Shelverton,
Pōhai A.N. Campbell,
(Cades Schutte LLP),
for Respondents-Appellees
MAUREEN JENAI SULLIVAN WALL and
KATHLEEN WENG AI SULLIVAN WO.